**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lighting Defense Group LLC, | No. CV-22-01476-PHX-SMB |
| Plaintiff, | Consolidated with: CV-22-01671-PHX-SMB |
| v. | **ORDER** |
| Shanghai Sansi Electronic Engineering Company Limited, et al., | |
| Defendants. | |
| SANSI LED Lighting Inc., and SANSI Smart Lighting Inc., | |
| Plaintiffs/Counter-Defendants, | |
| v. | |
| Lighting Defense Group LLC, | |
| Defendant/Counter-Plaintiff. | |

Pending before the Court is Plaintiff Lighting Defense Group LLC's ("LDG") Motion for Limited Reconsideration (Doc. 158). Following the Court's Order for expedited briefing, Defendants SANSI LED Lighting, Inc., SANSI Smart Lighting, Inc., and Shanghai SANSI Electronic Engineering Co., Ltd. (collectively, "SANSI") filed their Response (Doc. 171). Having considered the parties' briefings and the applicable law, the Court will deny LDG's Motion.

///

1    **I.      BACKGROUND**

2            This case stems from LDG's allegations that SANSI infringed on its various patents

3    related to light emitting diode (also known as an LED) technology.  The Court previously

4    issued an Order granting in part and denying in part summary judgment on both parties'

5    respective motions.  (Doc. 146.)  Relevant here, both parties moved for summary judgment

6    on the issue of marking under 35 U.S.C. § 287(a) and availability of pre-notice damages.

7    (*See* Doc. 107 at 11–16; Doc. 109 at 13–18.)

8            In LDG's Motion for Partial Summary Judgement it argued § 287 is inapplicable

9    until at least May 25, 2020 when it licensed its patents to a third-party, and that damages

10   are available beginning on June 26, 2020 after it issued actual notice to SANSI of the

11   alleged infringement.  (Doc. 107 at 11–16.)  LDG did not argue the availability of damages

12   for the period between May 25 and June 26, 2020.  Instead, relegated to a footnote, LDG

13   stated it "reserves its right and intends to present its case to the Jury regarding marking"

14   for that period.  (*Id.* at 13 n.1.)

15           Conversely, in SANSI's Motion for Summary Judgement, it argued that the notice

16   given to LDG about its failure to mark triggered § 287, thereby precluding all damages

17   pre-dating the actual notice LDG provided SANSI on June 26, 2020.  (Doc. 109 at 13–18.)

18   To support its argument, SANSI pointed to evidence showing: (1) LDG licensed the

19   patents-at-issue to two third parties that authorized the sale of its LED technology before

20   LDG had issued actual notice to SANSI; (2) those licenses did not include any obligation

21   for the third parties to mark the products sold or offered for sale; (3) the licensees, among

22   others, were listing and selling products practicing the patented technology online; and (4)

23   identifying the products and providing links to the online marketplaces, including those

24   within the United States, where the products could have been purchased.  (*Id.* at 15; *see*

25   *also* Doc. 110-2 at 76–94.)  In response, LDG argued that SANSI failed to meet its burden

26   of production to trigger § 287's marking requirement.  (Doc. 127 at 17–20.)  According to

27   LDG, SANSI did not produce any evidence that products were actually sold under the

28   licenses before LDG issued it actual notice because (1) SANSI accessed the links

1    after-the-fact, (2) those links may not have been accessible during the period in dispute, (3)

2    and the links for the products listed in the United States show the products as "currently

3    unavailable." (*Id.*)  In turn, SANSI maintained that it provided adequate notice of failure

4    to mark based on its proffered evidence.  (Doc. 138 at 10–12.)

5         After oral argument, this Court construed LDG's arguments as conceding and the

6    unavailability of damages between May 25 and June 26, 2020 upon a finding of a failure

7    to mark.  (Doc. 146 at 43.)  The Court then concluded that "[u]nder a plain reading, § 287(a)

8    precludes recovery after the requirement to mark is triggered until actual notice is given,

9    after which that date then controls the starting date for recovery." (*Id.* at 45–47.)  The

10   Court found that SANSI met its burden of production that LDG failed to mark its products,

11   and consequently LDG was not entitled to damages pre-dating June 26, 2020. (*Id.* at 43,

12   45–47.)

13        LDG now moves for reconsideration of the Court's finding of a concession to reach

14   the merits of whether pre-suit damages are available for the period between May 25 and

15   June 26, 2020.  (Doc. 158.)

16   **II.    LEGAL STANDARD**

17        "Motions to reconsider are appropriate only in rare circumstances." *333 W. Thomas*

18   *Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298, 1302 (D. Ariz. 1995).   These

19   circumstances include when the court "(1) is presented with newly discovered evidence,

20   (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an

21   intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS,*

22   *Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* LRCiv 7.2(g)(1).   "A motion for

23   reconsideration should not be used to ask a court to rethink what the court had already

24   thought through—rightly or wrongly." *United States v. Rezzonico*, 32 F. Supp. 2d 1112,

25   1116 (D. Ariz. 1998) (cleaned up); Lastly, courts should deny motions for reconsideration

26   if they only reiterate previous arguments.  *See Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th

27   Cir. 1995); *see also Ogden v. CDI Corp.*, No. CV 20-01490-PHX-CDB, 2021 WL

28   2634503, at *3 (D. Ariz. Jan. 6, 2021) (denying a motion for reconsideration when plaintiff

did "nothing more than disagree with this Court as to the relevant law").

## III.    DISCUSSION

For purposes of the pending Motion, the essence of the overlapping summary judgment dispute is narrow and straightforward.    According to LDG, the Court misconstrued its arguments as a concession of the availability of damages between May 25 and June 26, 2020, and it did not waive the issue.  (Doc. 158 at 3–6.)  LDG contends that it "did not affirmatively address in its motions the timeframe between May 25, 2020 and June 26, 2020 because LDG believed—and continues to believe—a genuine dispute of material fact exists as to whether any offers for sale giving rise to a duty to mark occurred during this timeframe."  (*Id.* at 4.)  LDG requests that the Court reconsider its finding that LDG conceded and waived the availability of damages during that period, which would require the Court to consider the merits of the dispute.  (*Id.* at 6.)

Although, in its own words, LDG did not affirmatively address the timeframe before May 25 and June 26, 2020, LDG appears to request that the Court read into the lack of an affirmative dispute that there is in fact, a clear misunderstanding and a dispute of material fact on the issue.  At oral argument, LDG's counsel stated:

> So marking. There are competing motions, as the Court recognized. We put this on a timeline. So before May 25th, 2020, there were no patented articles sold by the owner or any licensee under the asserted patents. May 25th, 2020, the GE RUN license is signed. Now, that doesn't give rise itself to a need to mark. Marking has to happen when patented articles are sold, offered for sale, made, or imported. Notice was given to Sansi about the infringement on June 26th, 2020. So our motion is before May 25th, 2020, there was no need to mark, and we're entitled to damages for that period. And after June 26th, 2020, Sansi was -- was given actual notice, and so we're entitled to damages for that period. And then Sansi's motion is prior to 6-26-20, no damages at all because of the licenses, and what they believe were products on sale, but we can't find any evidence of products on sale within that month time frame.

(Doc. 149 at 68:15–69:5 (Transcript of Oral Argument held on November 15, 2024).)  LDG understands this statement and its responsive arguments as raising a dispute that damages are available for that period.  (Doc. 158 at 5.)  LDG further provides that the following slide presented at oral argument, viewed independently or in conjunction with counsel's

statements, evidences the Court's misunderstanding.



| Marking Disputes |
| --- |

**Damages Timeline (Disputes)**

2016        5/25/20    6/26/20        2025

- LDG moves for summary judgment that it is entitled to damages from 2016 to 5/25/20 (prior to any licensing)
- LDG moves for summary judgment that it is entitled to damages from 6/26/20 to 2025 (after the data of the notice letter)
- Sansi moves for summary judgment that no damages are available prior to 6/26/20 (no damages until the notice letter)

(*Id.* at 4, 5.)

The Court previously understood LDG's arguments as a concession based on its silence and lack of clarity. To the extent the Court gleans a misunderstanding from what appears opaque, the Court now finds clarity in LDG's dispute—the marking statute was not triggered because LDG could not find any evidence products were sold during the relevant period and SANSI otherwise failed to meet its burden.

As previously outlined, "[t]he patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017). Section 287 is a limitation on damages, and not an affirmative defense. *Id.* at 1366. "The burden of proving compliance with marking is and at all times remains on the patentee." *Id.* at 1367. Compliance is a question of fact. *Id.* at 1366 (noting the compliance requirement extends to licensees). As the Federal Circuit has stated:

> [A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to § 287. To be clear, this is a low bar. The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent. *The alleged infringer's burden is a*

- 5 -

1    *burden of production, not one of persuasion or proof.*

2    *Id.* at 1368 (emphasis added). "Once the alleged infringer meets its burden of production,

3    however, the patentee bears the burden to prove the products identified do not practice the

4    patented invention," or where licensees compliance is at issue, "whether the patentee made

5    reasonable efforts to ensure compliance with the marking requirements." *Id.* at 1366

6    (quoting *Maxwell*, 86 F.3d at 1111).

7        Even with the miscommunication, as SANSI correctly argues, SANSI met its

8    burden of production and that has not changed from the Court's previous Order. (*See* Doc.

9    171.) SANSI provided the licenses that were effective during the relevant period, those

10   licensees had listed products SANSI believed were practicing the patented technology

11   online for sale, and LDG never required its licensees to mark licensed products. LDG

12   exclaiming that there is no direct evidence that the products were actually sold during that

13   period ignores the apparent inferential value of the evidence and further does not negate

14   that SANSI's burden was not one of persuasion or proof. *Arctic Cat*, 876 F.3d at 1368.

15   Rather than make a showing that (1) these licensees did mark the products—at any

16   time—(2) that the products did not practice the claimed invention (3) or that LDG made

17   reasonable efforts to ensure compliance, LDG argues against the persuasiveness of

18   SANSI's evidence and rehashes the same arguments it failed to affirmatively develop prior.

19   Consequently, LDG inappropriately increases SANSI's burden to avoid its ultimate burden

20   of proving compliance at all times. *Id.* at 1367.[1] Further, LDG's proffered arguments

21   against SANSI's evidence defy common sense and do not give rise to a genuine dispute.

22

23   [1] LDG also previously argued its failure to mark was excused because it was *de minimus*.
     (Doc. 127 at 21.) The case LDG cites states such a rule covers "unmarked products were
24   a *de minimis* portion of the released goods in comparison to the vast majority of
     goods—which were, indeed, marked." *See Flatworld Interactives LLC v. Samsung Elecs.*
25   *Co.*, 77 F. Supp. 3d 378, 388 (D. Del. 2014). However, LDG does not compare marked
     and unmarked products, and instead argued based on the limited timeframe between its
26   failure to mark and actual notice justifies the excuse. LDG pointed to no authority for the
     position that timeframe alone could justify failure to mark as *de minimus*. Nor has LDG
27   provided any guidance as to whether this excuse would operate to refute SANSI's burden
     or excuses LDG's failure to prove compliance after the burden shifted back to LDG.
28   Considering that the burden to prove damages and compliance with § 287 always remains
     on the patentee, it seems to be the latter. *See Arctic Cat*, 876 F.3d at 1367. Therefore,
     LDG's argument is unavailing.

LDG therefore failed to show compliance with § 287, triggering the actual notice requirements, of which damages are precluded for any damages arising before that notice. Thus, even construing LDG's dispute as a miscommunication, the Court finds no error its prior holding. *See* LRCiv 7.2(g).

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Plaintiff's Motion for Limited Reconsideration (Doc. 158).

Dated this 20th day of December, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge