**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lighting Defense Group LLC, | No. CV-22-01476-PHX-SMB |
| Plaintiff, | Consolidated with: CV-22-01671-PHX-SMB |
| v. | **ORDER** |
| Shanghai Sansi Electronic Engineering Company Limited, et al., | |
| Defendants. | |
| SANSI LED Lighting Inc., and SANSI Smart Lighting Inc., | |
| Plaintiffs/Counter-Defendants, | |
| v. | |
| Lighting Defense Group LLC, | |
| Defendant/Counter-Plaintiff. | |

Before the Court is Defendants SANSI LED Lighting, Inc., SANSI Smart Lighting, Inc., and Shanghai SANSI Electronic Engineering Co., Ltd.'s (collectively, "SANSI") Motion to Enforce Court Order (Doc. 180). Plaintiff Lighting Defense Group LLC ("LDG") filed a Response (Doc. 186), to which SANSI filed a Reply (Doc. 198). Having considered the parties' arguments and the applicable law, the Court will grant SANSI's Motion.

///

## I. BACKGROUND

This is a patent infringement case. (*See* Doc. 18.) The parties are familiar with the factual background of this case as set out in the Court's Order on their summary judgment motions. (*See* Doc. 146.) LDG holds patents to heat management technology for high efficiency light emitting diodes ("LEDs"), U.S. Patent Nos. 8,256,923 (the "'923 Patent"), 9,163,807 (the "'807 Patent"), 7,874,700 (the "'700 Patent"), and 8,939,608 (the "'608 Patent") (collectively, the "Asserted Patents"). (Doc. 18 at 2 ¶¶ 1–2.) The Asserted Patents generally encompass apparatus claims for a mountable LED light fixture. (*See* Doc. 68 at 11.) SANSI designs and sells various LED lighting products in stores and in online marketplaces, of which LDG alleges those products infringe on the Assert Patents. (Doc. 18 at 6–14.) The pending Motion relates to an opening expert report (the "Expert Report") from Dr. Thomas Katona, LDG's expert, in which he opines to LDG's various infringement contentions. (*See generally* Doc. 180-3 at 4–87.) The scope of those contentions is the crux of the dispute here.

The Court begins with the procedural and case management history as the facts of the case are generally not the focal point of the dispute. The Court's Case Management Order governs the disclosure of asserted claims and infringement contentions. *See* Case Management Order, *Sansi LED Lighting Inc., et al., v. Lighting Defense Group LLC*, No. CV-22-01671-PHX-SMB (D. Ariz. Dec. 14, 2022), ECF No. 26 at 4–5 ¶ 8 (consolidated case). The Case Management Order required LDG to serve its infringement contentions to SASNI by January 30, 2023, and to include the following information:

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality) of each opposing party of which the party is aware. This identification shall be as specific as possible. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus that, when used, allegedly results in the practice of the claimed method or process.

*Id.* ¶ 8(a)(1)–(2). Additionally, it required: "A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality,"

and "[w]hether each limitation of each asserted claim is alleged to be present in the Accused Instrumentality literally or under the doctrine of equivalents." *Id.* ¶ 8(a)(3)–(4).

LDG timely served its initial infringement contentions to SANSI, which included eighteen claim charts accusing roughly seventy-two SANSI products of infringing LDG's corresponding patents (the "Initial Infringement Contentions"). (Doc. 76-1 at 2.) LDG identified many of these potentially infringing products by searching various webpages, including on Amazon. (Doc. 186-6 at 5.) Thereafter, according to the Case Management Order, *Sansi LED Lighting*, CV-22-01671-PHX-SMB, ECF. No. 26 at 9–11 ¶ 8(f)–(i), the parties filed a Joint Stipulation Regarding Representative Accused Products for the Court's *Markman* hearing (Doc. 52). There, the parties stipulated that "LDG may use certain representative products to prove structure and operations of a broader set of Sansi's Accused Products strictly for the purposes of [this litigation]." (*Id.* at 2.) The parties stipulated to "Representative Categories," Group Nos. 1–9, "wherein each group includes representative product(s) in the column titled 'Model Number of Representative Products,' which are representative of other corresponding products included in the same group." (*Id.*) The Representative Categories included information on alleged infringing products' SKU numbers, product names, model numbers, and Amazon ASIN numbers that corresponded to the Model Number of Representative Products listed for each Group. (*See* Doc. 52-1 at 2–4.)[1] The parties further stipulated that "[p]roof of the structure and operation by LDG of any of the representative product(s) . . . shall constitute proof of the structure and operation of all other corresponding products in that product group." (Doc. 52 at 2–3.)

The parties stipulated to, and the Court granted, a modification to the case management deadlines to account for the *Markman* hearing and ensuing claim construction. (Doc. 60.) Before the *Markman* hearing, LDG amended its infringement

---

[1] SANSI products could have the same model number but a different name. (Doc. 186-6 at 4–5.) Additionally, SANSI products that LDG found listed on Amazon, for example, only used the Amazon ASIN number and not the model number. (*Id.* at 5.) The Representative Categories appear to account for these variants within a group and representative product. (*See* Doc. 52-1 at 2–4.)

contentions (the "First Amended Infringement Contentions") to account for newly discovered products and served it on SANSI. (*See* Doc. 186-2 at 2–5; *see also* Doc. 62 (LDG's Motion for Leave to Amend Infringement Contentions); Doc. 63 (granting leave to amend).)[2] The First Amended Infringement Contentions used the same groupings along with the eighteen claims and identified an additional ninety accused products. (Doc. 76-1 at 2–3.) The Court then conducted the *Markman* hearing. (Doc. 66.) The parties again stipulated to, and the Court granted, a second extension to the case management deadlines to account for the Court's Claim Construction Order. (Doc. 67; Doc. 69; *see also* Doc. 68.) And for a third and fourth time, the parties stipulated to, and the Court granted, extensions based on SANSI's productions in fact discovery relating its sales information. (Doc. 71; Doc. 73; Doc. 74; Doc. 75.)

On May 1, 2025, over four months after the Court's Claim Construction Order issued, but before the modified deadline for fact discovery, LDG sought leave to amend its infringement contentions for a second time (the "Proposed Second Amended Infringement Contentions"). (Doc. 76.) LDG noted that near the end of February it had inspected SANSI's Amazon seller webpage and identified SKU discrepancies. (Doc. 76-1 at 4.) About a month later, SANSI served interrogatory responses, identifying "39 new SKUs and 39 new ASINs." (*Id.*) LDG thereafter served the Proposed Second Amended Infringement Contentions on SANSI. (*Id.*; *see also* Doc. 82.)

Before the Court ruled on the Motion for Leave to Serve the Proposed Second Amended Infringement Contentions, LDG served Dr. Katona's Expert Report on SANSI. (Doc. 186 at 10.) Prior to serving the Expert Report, LDG did not seek an expedited ruling

---

[2] For amendments to the infringement contentions, the Case Management Order provides:

> Amendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include (a) recent discovery of material prior art despite earlier diligent search and (b) recent discovery of nonpublic information about the Accused Instrumentality that was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

*Id.* at 9 ¶ (8)(e).

on the Motion, nor did it after. The Court denied leave to amend because LDG moved for leave to amend four months after the Claim Construction Order issued and it failed to adequately explain what they learned from depositions after that Order that they could not have known earlier. (Doc. 147 at 1–2.) The Proposed Second Amended Contentions did not add any "new" or "additional" SANSI products, in a general sense of the terms, i.e., products that had not been already identified as infringing at least one of LDG's Asserted Patents in its First Amended Infringement Contentions. (*See* Doc. 83 at 3.) Rather, the proposed changes added ten new claim charts, modified the existing eighteen charts, identified the already-identified accused products by the newly discovered SKUs and ASINs, and reorganized the accused products to add the SKUs and ASINs to Representative Categories. (*See* Doc. 76 at 7; Doc. 82 at 3; Doc. 83 at 3.) In effect, the changes expanded the scope of the accused products within a Representative Category alleged to have infringed on a specific patent. (Doc. 83 at 5.)[3]

After the Court denied the amendments, SANSI informed LDG that the Expert Report contains opinions that were not properly disclosed as part of the First Amended Infringement Contentions. (*See* Doc. 180-2 at 9–10.) The parties unsuccessfully met and conferred on the issue. (*See id.* at 3–5.) SANSI now moves to enforce the Court's Order

---

[3] For clarity's sake, this characterization evidently created a point of confusion for the Court and the parties. (*See, e.g.*, Doc. 147 at 2 (explaining LDG failed to justify its lack of diligence in seeking the amendments of the additional infringing products); Doc. 186 at 17 (clarifying, in addressing the Court's Order, that "LDG respectfully submits that it did ***not*** seek to 'add additional infringing products'").) In its Reply in Support of its Motion for Leave to Amend, LDG stated: "To be clear: ***each new SKU is a new product*** that is added *to the list of Accused Products*. This is not 'financial discovery,' this is an enlargement of the scope of the infringement case as new accused products are being added." (Doc. 83 at 5.) Yet, LDG also characterized the changes as "narrowing" the outstanding infringement issues. (*Id.* at 3.) The Court's statement about lack of diligence and "discovery of additional infringing product," in the context of this case's peculiar history, was intended to convey that LDG lacked diligence in seeking the second set of amendments when it discovered the additional products before it served the First Amendment Infringement Contentions and the subsequent discovery of those products identified by different SKUs and ASINs. LDG own characterization phrased "each new SKU [as] a new product," but these were in fact not new products. In the Court's view, LDG failed to explain how discovery of those SKUs and ASINs justified the changes, when the products themselves were discovered months prior, already alleged to infringe certain patents. LDG was aware of the Court's Claim Construction for months, thereby providing LDG a means to evaluate the extent and scope of the already-accused products' infringement on its Asserted Patents, but LDG waited months to accuse those products of infringing on certain patents.

- 5 -

denying leave to amend the infringement contentions and requests that the Court strike all or some the paragraphs in the Expert Report related to contentions improperly raised in the Proposed Second Amended Infringement Contentions. (Doc. 180.)

## II.    LEGAL STANDARD

"District courts have an inherent power to control their dockets." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (1986) (per curiam). Federal Rule of Civil Procedure 16 "authorizes a court to manage cases so that disposition is expedited, . . . the quality of the trial is improved, and settlement is facilitated. It recognizes 'the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (citation omitted). The Court's Case Management Order required LDG, its infringement contentions, to identify: (1) each claim of each asserted patent that is allegedly infringed"; (2) each accused product for which the LDG is aware, specifically for each asserted claim, and as specific as possible by name or model number; and (3) a chart identifying specifically how each limitation of a claim is found within the accused product. *Sansi LED Lighting*, CV-22-01671-PHX-SMB, ECF. No. 26 at 9–10 ¶ 8(a)(1)–(3). The Case Management Order generally tracks other jurisdictions' local patent rules. *See, e.g.*, N.D. Cal., Pat. L.R. 3-1(a)–(c); E.D. Tex., Pat. L.R. 3-1(a)–(c); *see also Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025 (Fed. Cir. 2015) ("Local patent rules are essentially a series of case management orders that fall within a district court's broad power to control its docket and enforce its order.").

Once a party serves its infringement contentions, "the contentions constitute the universe of the parties' respective theories." *Finjan, Inc. v. Symantec Corp.*, No. 14CV02998HSGJSC, 2018 WL 620169, at *1 (N.D. Cal. Jan. 30, 2018). The disclosure serves the purpose of "require[ing] parties to crystallize their theories of the case early in the litigation." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (citation omitted). It avoids a "shifting sands" approach to after claim

construction. *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). This "further[s] the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Genentech, Inc. v. Trustees of Univ. of Pa.*, Case No. 10-cv-2037, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012) (cleaned up). A patentee's infringement contentions "do not need to include proof or direct evidence of infringement." *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1338 (Fed. Cir. 2014). But a "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12–CV–02099–JST, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014).

### III. DISCUSSION

#### A. The Parties' Arguments

The parties do not dispute that the First Amended Infringement Contentions are the operative contentions. (*See, e.g.*, Doc. 180 at 7; Doc. 186 at 6.) The parties' arguments, however, are intertwined and overlapping, making it a challenge to identify the specific issues in dispute. From what the Court can glean, the dispute is as follows.

SANSI arguments fall into two buckets: (1) Dr. Katona's Expert Report provides opinions that certain products infringe on certain patents that were not previously accused or charted; and (2) his opinions reflect new theories on how certain bulbs meet certain limitations in the patents, both of which are improper. (*See* Doc. 180 at 3 n.1.)[4]

---

[4] SANSI provides the paragraphs of the Expert Report at issue as follows: "For the first issue, the relevant paragraphs are all or some of 77, 79, 172, 174–175, 177, 182–253, 366, 368–369, 387–418, 430, 432–433, 441–450, 452–453, 455, 461, 483–494, 496–497, 499, 504–513, 546–557, 559-560, 562, 569, 571–585, 618–628, 634, 640, and 642–645. For the second, the relevant paragraphs are 588–590, 594, 600–602, 606, 610–612, 616, 648–650, 654, 656, 660–662, 666, 672–674, 678, 682–684, 688, 692–695, 697, and 698." (*Id.* at 5 n.3.)

Regarding the second bucket, SANSI advances two issues relating to Groups 2 and 9 products and Dr. Katona's infringement theories. (Doc. 180 at 14–19.) First, SANSI contends that the operative contentions have referred to the entire end of a bulb as the member, as depicted below with representative product for Group 2 on the left and Group 9 on the right.




(*See* Doc. 190-3 at 92, 123, 133; Doc. 180-2 at 23, 40.) Whereas, Dr. Katona relies on the Proposed Second Amended Infringement Contentions, which include, in addition to "member" identified above, that each ceramic cell are also members, as depicted below (Group 2 on the left and Group 9 on the right). In SANSI's view, each ceramic cell being a "member" identified below is a new theory not previously disclosed in the operative contentions for the '608, '807, and '923 Patents. (Doc. 180 at 15–16.)



(*See* Doc. 180-4 at 4–7, 80–82; Doc. 180-5 at 4–6, 30–32.)

For SANSI's second issue, it argues the operative contentions only disclose a "central vent" in Group 2 products as the accused "channel" for the '608 and '807 Patents as shown below. (Doc. 180 at 17–18.)



(*See* Doc. 180-3 at 125, 136–37.) SANSI similarly faults Dr. Katona for relying on the Proposed Second Amended Infringement Contentions that include multiple channels. (Doc. 180 at 18–19.) Those contentions identify additional channels under two analyses that can be combined as highlighted in blue below.



(*See* Doc. 180-4 at 90–94; Doc. 180-5 at 14–18.)

LDG responds its Expert Report does not include allegations against "new products" nor does it disclose new infringement theories. (Doc. 186 at 17–19.) According to LDG, SANSI had notice of its infringement theories because the Asserted Patents contain similar claims, overlap in scope, and the accused products all have the same representative accused features for heat management. (Doc. 186 at 11–16.) For the multiple member theory, LDG argues that the following figure in operative infringement contentions related to the '923

Patent depicts arrows pointing to the ceramic cells as the members.



(*Id.* at 19–20; *see also* Doc. 180-3 at 92, 93, 94; *cf.* Doc. 180-3 at 123–125, 133–35, 138.) For disclosure of its multiple channel theory, LDG argues the following figure depicts multiple channels around the ceramic cell as part of its operative infringement contentions for the '923 Patent.



(Doc. 186 at 20–21; *see also* Doc. 180-3 at 96.)

In reply, SANSI maintains that the contentions regarding Group 9 only relate to the infringement theories related to the '923 Patent for that group of products, and does not provide a theory regarding that group of products infringes the '608 and '807 patents. (Doc. 198 at 4–5.) SANSI also argues that LDG's rebuttal regarding the channels and the central vent only relates to the contentions for the '923 Patent and does not provide a multiple channel theory for the '608 and '807 patents. (*Id.* at 10–11.)

**B.   Analysis**

The Court begins by addressing the issue of the Expert Report providing opinions that certain accused products infringe on certain patents not directly alleged in the operative

contentions. Allowing LDG to assert that previously identified accused products infringe on certain patents that were not previously asserted would circumvent the Court's Case Management Order and enable the Expert Report to provide new infringement theories with respect to those products. *ASUS Comp. Int'l v. Round Rock Research, LLC*, 2014 WL 1463609, at *1; *see also Sansi LED Lighting*, CV-22-01671-PHX-SMB, ECF. No. 26 at 9–10 ¶ 8(a)(1)–(3). "The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Finjan*, 2018 WL 620169, at *2; *see also Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-CV-01577-H-BGS, 2019 WL 5790999, at *3 (S.D. Cal. Sept. 18, 2019).

        The Court's Case Management Order required LDG to identify in its infringement contentions: (1) each claim of each asserted patent that is allegedly infringed"; (2) each accused product for which the LDG is aware, specifically for each asserted claim, and as specific as possible by name or model number; and (3) a chart identifying specifically how each limitation of a claim is found within the accused product. *Sansi LED Lighting*, CV-22-01671-PHX-SMB, ECF. No. 26 at 9–10 ¶ 8(a)(1)–(3); *see also LoganTree LP v. Garmin Int'l, Inc.*, No. 17-1217-EFM-ADM, 2021 WL 5998293, at *14 (D. Kan. Dec. 20, 2021) ("[T]he most common remedy when a party violates the scheduling order by articulating new theories in an expert report that were not timely disclosed in infringement contentions is to strike those portions of an expert report."). The parties also stipulated to grouping the products based on their similarities and then to use a representative product to cover the specific group. (Doc. 52.) At the time LDG served its First Amended Infringement contentions, it had the list of the accused products and asserted particular infringement contentions against them based on the corresponding groupings. Even if LDG did not know of the SKUs or ASINs at the time, it should have included allegations that those products infringed the relevant patents claims with the information it had at the

time.[5] It was not unreasonable for SANSI to rely on LDG's organization to understand the universe of products within a particular group alleged to have infringed particular patents. *See, e.g.*, *ASUS Comp. Int'l*, 2014 WL 1463609, at *7 (striking identification of infringing products not included in a list of a series of products previously identified); *see also Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1234 (N.D. Cal. 2019) ("[T]he point of contentions is to eliminate the guesswork involved in going through a party's documentary and other evidence.").

Dr. Katona, by opining that elements of products within a group now infringe different patents, has improperly asserted undisclosed infringement theories with respect to those new allegations. For Group 1, the operative contentions only addressed a chart for infringement of the '700 Patent. (Doc. 180 at 10.) But the Expert Report includes opinions that Group 1 products also infringe on the '608, '807, and '923 Patents. (*See* Doc. 180-3 at 6–25.) For Group 3, the operative contentions only charted infringement of the '608 and '807 Patents, but the Expert Report provides opinions that the Group infringes on the '923 Patent. (*See id.* at 27.) For Group 4, the operative contentions only charted infringement of the '923 Patent, but the Expert Report provides opinions on '608 and '807 Patents regarding the Group. (*Id.* at 35.) For Group 7, the operative contentions only charted infringement of the '923 Patent, but the Expert Report provides opinions on '608 and '807 Patents regarding the Group. (*Id.* at 46.) And finally, for Group 9, the Expert Report contains opinions that the '608 and '807 Patents are infringed, but the operative contentions only charted infringement of the '923 Patent. (*Id.* at 57.) These are previously undisclosed infringement allegations and are improper. *See, e.g.*, *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *7 (N.D. Cal. Aug. 20, 2014) (striking expert report where it included opinions that prior art references practiced additional limitations in patent claims not previously charted); *Willis Elec. Co. v. Polygroup Macau*

---

[5] Notably, LDG's First Amended Infringement Contentions state "the specific product numbers, SKUs, brand names . . . that SANSI . . . assign[s] to [its] products do not affect the Accused Products and are not relevant to infringement in this case." (Doc. 186-6 at 10.) LDG knew of its infringement theories and the universe of accused products. It cannot now contend that the new SKUs or ASINs, which in its words are irrelevant, provided means to excuse its failure to assert the relevant infringement contentions.

*Ltd. (BVI)*, 649 F. Supp. 3d 780, 810 (D. Minn. 2023) (excluding an expert's opinions where the plaintiff failed to disclose a theory of infringement as to specific patent claims with respect to particular groups of accused products).  Thus, the Court agrees with SANSI and will strike the references to allegations regarding previously identified products now alleged to infringe on certain patents that were not part of the operative contentions.

With respect to Dr. Katona opining on each ceramic cell being a distinct member for Groups 2 and 9 products and multiple channels in the Group 2 products, both present new infringement theories not properly disclosed in the operative contentions.

First regarding the multiple-member theory, LDG relies on an ambiguous arrow within its chart for the '923 Patent that may appear to point to the ceramic cells of Group 2 products as being members, although the Group 2 allegations reference the member as singular, not plural.  (*See* Doc. 180-3 at 93.)  Immediately preceding the figure that LDG relies on (shown above), LDG's chart identifies the member as the entire base of the bulb for the same claim limitation.  (*See id.* at 92.)  Further, LDG once again depicted the singular member has the entire base for a claim that is dependent on that limitation, as shown below.



(*See id.* at 100; *see also id.* at 102.)  Any ambiguity in the arrows is belied by repeated references to the base of the bulb being the member and the multiple-member theory is unsupported in the appropriate context.  LDG treats the member of the Group 9 products the same way.  (*See* Doc. 180-2 at 16, 23, 30.)  Thus, the Court agrees with SANSI and

therefore finds that the multi-member theory is new and not disclosed in the operative contentions. *See, e.g.*, *Echologics, LLC v. Orbis Intelligent Sys., Inc.*, No. 21-CV-01147-H-AHG, 2023 WL 2756492, at *9 (S.D. Cal. Mar. 27, 2023) (striking an expert report where it identified a new structure in the accused product as satisfying a claim limitation that was not previously included in the infringement contentions). The Court will strike Dr. Katona's opinions to the extent he relies on such a theory.

SANSI is again correct that multiple-channel theory only relates to the '923 Patent, not the allegations related to the '608 and '807 Patents. LDG did not disclose its multiple-channel theory as it relates to Group 2 products infringing the '608 and '807 Patents. (*See* Doc. 180-3 at 125, 136–37.) Although patents may have similarities, the inclusion of the multiple-channel theory provides a new infringement theory with respect to Group 2 products as applied to the claim limitations in the '608 and '807 Patents. Thus, the Court will strike the Expert Report to the extent it relies on the new theory for the '608 and '807 Patents.

LDG's proper course was to seek an amendment when it discovered the universe of products it now claims are infringing specific patents and assert its theories with respect to those products and the particular patent claims. For the Court to allow otherwise, would strip the operative contentions of a definable scope and render the Case Management Order's specificity requirements useless.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Enforce Court Order (Doc. 180).

**IT IS FURTHER ORDERD striking** the following portions of the Expert Report of Dr. Katona:

- All opinions relying on LDG's proposed Second Amended Infringement Contentions, including any theories not specifically identified and set forth in LDG's operative infringement contentions. This includes but is not limited to

assertions that groups of representative bulbs infringe patent claims that they were not previously asserted against (as in, specifically charted for) in LDG's contentions. This includes but is not limited to some or all of the opinions in paragraphs 77, 79, 172, 174–175, 177, 182-253, 366, 368–369, 387–418, 430, 432–433, 441–450, 452–453, 455, 461, 483–494, 496–497, 499, 504–513, 546–557, 559–560, 562, 569, 571–585, 618–628, 634, 640, and 642–645.

- New opinions offered in connection with the Group 2 and 9 bulbs that: (1) each ceramic heat sink cell is a distinct member; and (2) that the accused "channel" and related apertures under the '608 and '807 patents correspond to anything other than the so-called "central vent" of the Group 2 bulbs. This includes but is not limited to new opinions set forth at paragraphs 588–590, 594, 600–602, 606, 610–612, 616, 648-650, 654, 656, 660–662, 666, 672–674, 678, 682–684, 688, 692–695, 697, and 698.

Dated this 11th day of March, 2025.

Honorable Susan M. Brnovich
United States District Judge